IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2021 Session

## DONNY N. PARSLEY v. CITY OF MANCHESTER, TENNESSEE

Appeal from the Chancery Court for Coffee County
No. 2020-CV-300    Larry B. Stanley, Jr., Chancellor

_____

### No. M2021-00200-COA-R3-CV

_____

This is a declaratory judgment action in which the plaintiff—a citizen of the City of Manchester, Tennessee, who was "the next highest vote getter" for Alderman, but not elected in the most recent election—contends he is entitled to fill a mid-term vacancy on the Board of Aldermen. The dispute arose when the City's Board of Aldermen announced it was accepting applications to fill the vacant seat on the Board. In the Complaint that followed, the plaintiff asked the court to declare the proper procedure for filling a mid-term Board vacancy under the City's Charter. The trial court dismissed the Complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6), explaining that the Complaint failed to state a claim because the unambiguous language in the Charter did not entitle the plaintiff to the vacant seat. The court also ruled the plaintiff did not have standing "as a citizen." On appeal, the plaintiff contends that the trial court should have declared the rights of the parties instead of dismissing the declaratory judgment action under Rule 12.02(6) and asserts that he had standing as the "next highest vote getter" in the last election. While motions to dismiss "are rarely appropriate in declaratory judgment actions," *Cannon Cnty. Bd. of Educ. v. Wade*, 178 S.W.3d 725, 730 (Tenn. Ct. App. 2005) (citation omitted), the plaintiff has not shown that he was prejudiced by the decision. This is because, after thoroughly analyzing the City's Charter in the context of the facts stated in the Complaint, the court concluded that the Charter was unambiguous and provided no circumstance in which the "next highest vote getter" from the previous election would be entitled to fill a mid-term vacancy. Accordingly, we modify the judgment of the trial court and remand with instructions for the trial court to enter judgment holding that Plaintiff is not entitled to fill the vacancy on the Board of Alderman under Article IV, §6(c) by virtue of the fact that he was the next highest vote getter at the election preceding the occurrence of a vacancy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Modified and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

Jeremy Wayne Parham and Mary Elizabeth Henderson, Murfreesboro, Tennessee, for the appellant, Donny N. Parsley.

Gerald Leighton Ewell, Jr., Tullahoma, Tennessee, for the appellee, City of Manchester, Tennessee.

## OPINION

The Board of Mayor and Aldermen ("the Board") of the City of Manchester, Tennessee ("the City"), is comprised of six members who are elected by the citizens of Manchester, Tennessee.[1] Board members are elected to staggered 4-year terms, with three Board positions standing for election every two years. The top three qualified candidates standing for election to the Board and receiving the most votes are elected to fill the three Board positions up for election during the general election, which is held in August of even-numbered years.

In August 2020, Donny N. Parsley ("Plaintiff") finished fourth in the race for three open seats on the Board. Accordingly, Plaintiff was not elected, while the top three candidates ("vote getters") were duly elected.

In October 2020, after the new Aldermen had taken office, the Mayor of Manchester died. Acting pursuant to the relevant provisions of the Charter, the Board elected an incumbent Alderman as Mayor, creating a mid-term vacancy on the Board.[2] Shortly thereafter, the Board announced it was accepting applications to fill the vacancy.

Upon learning of the announcement, Plaintiff filed his Complaint for declaratory and injunctive relief. Plaintiff alleged that the City Charter provided multiple mechanisms for filling a vacancy on the Board, including appointing "the 'next highest vote getter' from the previous election." Plaintiff also alleged that he was entitled to fill the vacancy because he was the "next highest vote getter" from the previous election and argued that the other methods for filling a vacancy "should only apply in the event there is no remaining qualified 'highest vote getter' from the previous election." Further, Plaintiff asserted that the appointment of another person would injure him as the "next highest vote getter" and "as a citizen of Manchester":

---

[1] The Aldermen are elected at-large; they do not represent districts.

[2] Lonnie Norman, the Mayor of the City of Manchester, died on October 12, 2019. Pursuant to the provisions of the Charter, the Board elected then-Alderwoman and Vice Mayor Marilyn Howard to assume the role of Mayor and fill the balance of Mayor Norman's term in office until the next regular election cycle.

20. [Plaintiff] will suffer immediate and irreparable injury should the Mayor and Board be allowed to fill the vacant Alderman position prior to further hearing before this Court to determine the parties' respective rights and obligations pursuant to Article IV, §6(c) of the Charter.

21. Specifically, [Plaintiff] may be deprived of his right to serve as Alderman having stood for election to the position and garnering the next highest number of votes.

22. Further, immediate and irreparable injury may occur to [Plaintiff] as a citizen of Manchester, Tennessee[,] should the Board take action by majority vote which would include the potential tie-breaking vote of an Alderman which might otherwise be appointed in violation of the provisions of the Charter.

The City moved to dismiss the action under Tennessee Rule of Civil Procedure 12.02(6), arguing that the plain language of the City Charter provided no circumstance in which "the next highest vote getter" from the last election would automatically fill a mid-term vacancy on the Board. The City also argued that Plaintiff lacked standing to pursue the action "as a citizen."

Two days later, on November 4, 2020, Plaintiff responded by arguing that dismissal under Rule 12.02(6) would be improper because a dispute existed over the correct interpretation of the Charter's language. He also maintained that he had standing as the "next highest vote getter." In his Response to the Motion to Dismiss, Plaintiff argued that he was entitled to a declaration of his rights under the City Charter:

The verified Complaint in this matter, when admitted as true for purposes of Defendant's Motion, demonstrates the existence of an actual controversy that is properly subject to declaratory judgment before this Court. [Tennessee Code Annotated] § 29-14-102 states in relevant part:

(a) Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

(b) No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.

Further, . . . § 29-14-103 provides:

Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and

obtain a declaration of rights, status, or other legal relations thereunder.

It remains [Plaintiff]'s position that he should be sworn in to fill the balance of the Alderman position vacated by Marilyn Howard pursuant to Article IV, §[ 6](c) of the Charter which states, "Aldermanic positions being filled for the balance of the term shall go to the next highest vote getter, with the top highest vote getters being election [sic] to the regularly rotating aldermanic seats." Per the Motion filed by Defendant, it is the City's argument that the last sentence of the Article IV, §[ 6](c) only applies where a vacant position is filled by the Mayor and Board until such time as the next regular election and that the "next highest vote getter" then fills the balance of the appointed term. As such, there is clearly a dispute between the respective parties as to the appropriate interpretation of the Charter which is appropriate for adjudication pursuant to . . . §§ 29-14-1[02] & 103. It matters not, at this juncture, whether [Plaintiff] may ultimately be entitled to a favorable outcome.

(Fourth alteration in original) (citations omitted).

Plaintiff additionally responded to the City's lack of standing argument, asserting:

[Plaintiff]'s injury is "distinct and palpable" from the general citizenry in that he[] alone is the "next highest vote getter" from the most recent election cycle and, thus, stands unique among all others in his claim to the vacated alderman position. Second, there is certainly a causal connection between [Plaintiff]'s injury (loss of the vacated set) and the actions of the Mayor and Board by their contrary interpretation of the relevant portions of the Charter. Finally, [Plaintiff's] injury may be properly redressed by a favorable decision in that the City would be forced to install him in the position . . . should the case ultimately be decided in his favor.

Without stating its reasoning, the trial court entered an order dismissing the Complaint for failure to state a claim for which relief could be granted.

Plaintiff then moved to set aside the dismissal, arguing he was entitled to a hearing before the case was dismissed. After agreeing to afford Plaintiff a hearing, which occurred on December 4, 2020, the trial court entered a subsequent order in which the court explained its reasons for dismissing the Complaint:

Addressing the substantive position of Plaintiff, as alleged in the Complaint[,] the Court accepted Plaintiff's allegations of fact as true: that the Plaintiff was the next highest vote-getter at the election prior to the vacancy and that the Plaintiff was currently qualified to serve. The Court then

reviewed the Charter provision concerning the filling of vacancies and concluded, as a matter of law, that the facts alleged by Plaintiff did not entitle him to immediately be sworn in to the vacant Alderman position as he requested the Court rule and, thus, failed to state a claim for which the relief requested can be granted. Had the Court interpreted the Charter language to entitle Plaintiff to the Alderman position or [found] that it was unclear whether or not Plaintiff was entitled to the position[,] the Court would not have dismissed the action.

As to Plaintiff's request for a general declaration of "the proper procedure for filling the vacant Alderman position pursuant to the Charter[,"] . . . the Court finds Plaintiff does not have standing to seek this advisory declaration. Once the Court determined the Charter language did not entitle Plaintiff to the Alderman position[,] he had no rights or status different from any other citizen. With no allegation that Plaintiff was a current member of the Board of Mayor and Aldermen, the Mayor[,] or a member of the Coffee County Election Commission[,] there were no rights nor prospective behavior of Plaintiff which would be affected by the Court's declaration of "the proper procedure for filling the vacant Alderman position;" therefore, the Court finds Plaintiff does not have standing to seek such a declaration as a citizen. . . .

As the only conclusion that would permit the Court to dismiss this action for failure to state a claim was that Plaintiff is not entitled to the vacant Alderman seat by virtue of being the next highest vote getter at the election preceding the occurrence of a vacancy[,] the Court thinks that, after reaching this conclusion, a [d]ismissal for failure to state a claim was appropriate.

As to any declaration the Plaintiff seeks as a citizen concerning the proper method for the filling of a vacancy which does not affect Plaintiff differently than any other citizen[,] the Court finds Plaintiff lacks standing and, therefore, as a citizen, does not state a claim for which the relief requested can be granted.

This appeal followed.

### ISSUES

Plaintiff contends the trial court erred in dismissing the Complaint based upon the finding that Plaintiff lacked standing to have the trial court declare the proper method for filling a vacancy on the Board of Alderman. Further, Plaintiff contends that his Complaint, when admitted as true for purposes of the Motion to Dismiss, demonstrates the existence of an actual controversy that is properly subject to declaratory judgment. Accordingly, Plaintiff argues that the trial court employed an erroneous procedure by disposing of his

declaratory judgment action on a motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6).

For its part, the City contends that any procedural error in disposing of the case under Rule 12.02(6) was harmless because the trial court essentially "declared" that Plaintiff had no rights under the Charter as "the next highest vote getter."

The City also raises a separate issue, contending it is entitled to damages for frivolous appeal under Tennessee Code Annotated § 27-1-122.

**STANDARD OF REVIEW**

When reviewing a trial court's decision on a motion to dismiss for failure to state a claim, we use a de novo standard of review with no presumption of correctness afforded to the court's decision. *See Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996). We use the same standard when reviewing a trial court's determination on standing. *See In re Est. of Brock*, 536 S.W.3d 409, 413 (Tenn. 2017).

**ANALYSIS**

**I. STANDING**

The trial court ruled that Plaintiff lacked standing to seek a declaratory judgment in two contexts. First, the court found he lacked standing as the next highest vote getter after determining "the Charter language did not entitle Plaintiff to the Alderman position." Second, the court found he lacked standing as "a citizen" to seek a declaration concerning the proper method for filling the vacancy.

As for the first determination, which related to Plaintiff being "the highest vote getter" in the most recent election, we respectfully disagree with the trial court's ruling. Because an ultimate decision adverse to a plaintiff on the merits of the case does not deprive the party of standing to bring the action, *see Wade*, 178 S.W.3d at 730, we conclude that the court put the cart before the horse. Plaintiff was in a unique position to bring this action because he was the only person in the City of Manchester who was "the highest vote getter" in the most recent election. Accordingly, we hold that Plaintiff had standing to bring the action as "the highest vote getter."

As for Plaintiff's claim that he has standing by virtue of being "a citizen," we agree with the trial court's ruling. Standing "may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens." *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 621 (Tenn. 2006). Thus, we agree that Plaintiff does not have standing in this context. Nevertheless, we have previously concluded that he has standing as the only person who was "the highest vote getter" in the prior election; therefore, his claim may proceed.

- 6 -

II. DISMISSAL OF DECLARATORY JUDGMENT ACTION UNDER TENNESSEE RULE OF CIVIL PROCEDURE 12.02(6)

Plaintiff argues that a party seeking a declaratory judgment "need only state facts sufficient to demonstrate the existence of an actual controversy to survive a motion to dismiss" and asserts that "there is clearly a dispute between the respective parties as to the appropriate interpretation of the Charter."

"When considering a motion to dismiss a declaratory judgment action[,] it is important to recognize that the general purpose of a declaratory judgment action is not to award affirmative relief, but '*to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations*.'" *Blackwell v. Haslam*, No. M2011-00588-COA-R3-CV, 2012 WL 113655, at *7 (Tenn. Ct. App. Jan. 11, 2012) (emphasis added) (quoting *Wade*, 178 S.W.3d at 730). "The fact that the party seeking declaratory relief is not entitled to the judgment sought (that it is on the losing side of the controversy) does not mean that the parties are not entitled to the relief from uncertainty that a declaratory judgment affords." *Wade*, 178 S.W.3d at 730. "Thus, a party seeking a declaratory judgment is not required to allege facts in its complaint demonstrating that it is entitled to a *favorable* decision." *Id.* (emphasis added) (citations omitted).

Although there are exceptions, motions to dismiss under Tennessee Rule of Civil Procedure 12.02(6) "are rarely appropriate in declaratory judgment actions." *Id.* (citing *Glover v. Glendening*, 829 A.2d 532, 539 (Md. 2003)). "The prevailing rule is that when a party seeking a declaratory judgment alleges facts demonstrating the existence of an actual controversy concerning a matter covered by the declaratory judgment statute, the court should not grant a [Rule] 12.02(6) motion to dismiss but, instead, proceed to render a declaratory judgment as the facts and law require." *Id.* (citing *Hudson v. Jones*, 278 S.W.2d 799, 804 (Mo. Ct. App. 1955); 1 Walter H. Anderson, *Actions for Declaratory Judgments* § 318, at 740 (2d ed. 1951)). *But see Highwoods Properties, Inc. v. City of Memphis*, No. W2007-00454-COA-R3CV, 2007 WL 4170821, at *14 (Tenn. Ct. App. Nov. 27, 2007) (noting that "Tennessee courts have affirmed a trial court's granting of a Rule 12.02(6) motion to dismiss in a declaratory judgment action" in several cases (citations omitted)), *aff'd*, 297 S.W.3d 695 (Tenn. 2009).

Furthermore, even though the trial court granted the Motion to Dismiss Plaintiff's declaratory judgment action under Rule 12.02, this court may choose to review the underlying merits of the case without having to remand it. *See Karsonovich v. Kempe*, No. M2017-01052-COA-R3-CV, 2018 WL 1091735, at *3 (Tenn. Ct. App. Feb. 27, 2018). This procedure is particularly appropriate when, as here, the trial court addresses the merits of a declaratory judgment claim in its ruling on a Rule 12.02(6) motion to dismiss. *Id.* at *2–3, *5.

As is the case here, the trial judge in *Karsonovich* dismissed a claim for declaratory judgment pursuant to Rule 12.02(6) after addressing the merits of the claim in its ruling.

*Id.* at *2–3. In the *Karsonovich* appeal, we elected to review the merits of the ruling "in order to preserve judicial resources," *id.* at *3 (citing *Blackwell*, 2012 WL 113655, at *10), based on our determination that there did "not appear to be a need for any additional facts," *id; see also Frazier v. City of Chattanooga*, 1 S.W.2d 786, 786 (Tenn. 1928) (affirming trial court's dismissal of a declaratory judgment action even though it would have been "better practice" to enter a declaration). After conducting a thorough review of this case, we find that the same review process is appropriate in this appeal.

### III. THE MERITS OF THE DECLARATORY JUDGMENT ACTION

In his Complaint, Plaintiff alleged that "the Charter provides multiple mechanisms by which a vacant Alderman position may be filled," including by appointment of "the 'next highest vote getter' from the previous election." Plaintiff asserted that "the other methods prescribed by the Charter for filling a vacant Alderman term should only apply in the event there is no remaining qualified 'highest vote getter' from the previous election." Plaintiff attached a copy of the Charter to the Complaint.

In its Motion to Dismiss, the City asserted that "assuming Plaintiff's factual allegations are true," the Charter's language did not entitle him to relief. The City asked the trial court to resolve the matter "by addressing the substantive allegations" in the Complaint. In response, Plaintiff asserted that "there is clearly a dispute between the respective parties as to the appropriate interpretation of the Charter" based on his "position that he should be sworn in to fill the balance of the Alderman position."

Article IV, § 1 of the Charter provides that the Board must be "composed of the Mayor and six (6) Aldermen." Act of May 8, 2017, Art. IV, § 1(a), 2017 Tenn. Priv. Acts 85, 89 (ratified June 27, 2017). The Aldermen "shall be elected in the general city election" for staggered four-year terms, with three Aldermen elected every two years. *See id.* § 1(c). Article IV, § 6 of the Charter prescribes the methods for filling vacancies created by a member's "death, resignation, removal from office or forfeiture of office":

> A vacancy in the office of Alderman shall be filled until the next regular election, by a majority vote of all of the remaining members of the Board of Mayor and Aldermen. If the Board of Mayor and Aldermen fails to do so within sixty (60) days following the occurrence of the vacancy, the Mayor shall fill the vacancy until the next election. If the Mayor fails to fill the vacancy within sixty (60) days, either the Mayor or any two Aldermen shall notify the Coffee County Election Commission, who shall call a special election to fill the vacancy for the unexpired term. A special election shall be held not sooner than seventy-five (75) days and not later than eighty (80) days thereafter, and shall be governed by the general election laws of the state, except that no special election shall be held within one hundred and eighty (180) days of the next regular election. All appointments, until the next regular election, shall at the time of the next regular election, be filled

by electing someone for the balance of [the] term, if any, or for a new term. **Aldermanic positions being filled for the balance of the term shall go to the next highest vote getter, with the top highest vote getters being elected to the regularly rotating aldermanic seats**.

*Id.* § 6(a), (c), 2017 Tenn. Priv. Acts at 91 (emphasis added). The emphasized sentence immediately above is the focus of Plaintiff's contention that he was entitled to automatically fill the vacancy on the Board; however, we have determined that his reliance on this provision is misplaced.

When interpreting municipal charters, courts use "[t]he same rules of construction used to interpret statutes." *Metro. Elec. Power Bd. v. Metro. Gov't of Nashville & Davidson Cnty.*, 309 S.W.3d 474, 477 (Tenn. Ct. App. 2008) (citing *Hargrove v. Metro. Gov't of Nashville and Davidson Cnty.*, 154 S.W.3d 565, 567–68 (Tenn. Ct. App. 2004)). Thus, a charter "should be construed as a whole and its words given their natural and ordinary meaning." *Id.* (citing *Hargrove*, 154 S.W.3d at 568). And "[i]f the words are unambiguous, they should be enforced as written." *Id.* It is only when the language is ambiguous "that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009).

Although the Charter is not the model of clarity, we agree with the trial court's determination that the relevant language is not ambiguous. Thus, resorting to legislative history would be unnecessary. Moreover, the language simply does not support Plaintiff's contention that appointing "the 'next highest vote getter' from the **previous** election" is a method for filling a vacancy.

The Charter identifies three methods for filling a vacancy in order of operation. First, the Board may fill the seat "until the next regular election." If the Board fails to do so within 60 days, the Mayor may fill the seat "until the next election." If the Mayor fails to do so within 60 days, the Coffee County Election Commission may hold a special election to fill the vacancy "for the unexpired term." The next to last sentence of § 6(c) provides that "[a]ll appointments, until the next regular election, shall at the time of the next regular election, be filled **by electing someone for the balance of term**, if any, or for a new term." Thus, the Mayor or the Board's appointments last only "until the next regular election," at which time someone is elected "for the balance of the term." If a special election is held, the appointment is "for the unexpired term."

Finally, the last sentence—which gives rise to Plaintiff's claim—states that "Aldermanic positions being filled **for the balance of the term** shall go to the next highest vote getter." As explained, the only circumstance in which a vacancy is filled "**for the balance of the term**" is when the Board or the Mayor appoints someone "until the next regular election." Accordingly, we find "the next highest vote getter" refers to the runner-up in "the **next** regular election," meaning **the election that is held after a vacancy occurs**. This conclusion is consistent with, and corroborated by, the last clause of the last

sentence, which states, "the top highest vote getters" will be "elected to the regularly rotating aldermanic seats."

Furthermore, § 6(c) of the Charter identifies Board appointment as the first method for filling a vacancy. "The courts' goal is to construe a statute in a way that avoids conflict and facilitates the harmonious operation of the law." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010). The Charter's drafters expressed a preference for filling vacancies by a majority vote of the Board because the other two methods described depend on the Board's failure to fill the position within 60 days. Thus, interpreting the last sentence as **requiring** the vacancy to be filled by the "next highest vote getter" from the last election would create a conflict.

This brings us back to the trial court's decision to dismiss the Complaint pursuant to Rule 12.02 even though the trial court thoroughly discussed the merits of the dispute. "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). As the City correctly contends, the procedural error in disposing of the case under Rule 12.02(6) was harmless because the trial court essentially "declared" that Plaintiff had no rights under the Charter as "the next highest vote getter." Moreover, we agree with the trial court's determination that Plaintiff is not entitled to fill the vacancy.

Accordingly, we remand this matter with instructions for the trial court to enter judgment holding that Plaintiff is not entitled to fill the vacancy on the Board of Alderman under Article IV, §6(c) by virtue of the fact that he was the next highest vote getter at the election preceding the occurrence of a vacancy.

## IV. DAMAGES UNDER TENNESSEE CODE ANNOTATED § 27-1-122

The City also requests an award of attorneys' fees as damages under Tennessee Code Annotated § 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The City argues that Plaintiff's appeal is frivolous because "his only 'substantive' assertion on Appeal is that it 'remains his position he is entitled to the Aldermanic seat.'" The City asserts that Plaintiff "failed to even allege error by the trial [c]ourt in its determination that he was not entitled to the Aldermanic seat" and failed to "construct any argument or cite any authority that the trial Court was incorrect in this conclusion."

- 10 -

An award of fees under § 27-1-122 "rests in the appellate court's sound discretion." *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017). Appellate courts should exercise this discretion "sparingly so as not to discourage legitimate appeals." *Id.* (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). "A frivolous appeal is one that is 'devoid of merit such that it had no reasonable chance of succeeding.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 341 (Tenn. 2010) (quoting *Clark v. Nashville Mach. Elevator Co. Inc.*, 129 S.W.3d 42, 50 n.4 (Tenn. 2004)).

Although Plaintiff did not prevail in this appeal, we cannot say that Plaintiff's appeal was "devoid of merit." For these reasons, we deny the City's request for attorneys' fees under Tennessee Code Annotated § 27-1-122.

## IN CONCLUSION

The judgment of the trial court is modified, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Donny N. Parsley.

_____
FRANK G. CLEMENT JR., P.J., M.S.