IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 14, 2004 Session

# DONALD HARGROVE, ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

Appeal from the Chancery Court for Davidson County
No. 02-215-III    Ellen Hobbs Lyle, Chancellor

No. M2003-00289-COA-R3-CV - Filed June 22, 2004

This appeal involves a dispute regarding the procedures for returning a formerly disabled police officer to work. After the Employee Benefit Board of the Metropolitan Government of Nashville and Davidson County determined that the former officer was no longer disabled, the Metropolitan Nashville Police Department directed him to report to a 13-week training class. Fearing that he could lose both his disability pension and his job if he failed the training class, the officer filed suit in the Chancery Court for Davidson County seeking a declaratory judgment that the Department lacked the authority to require him to complete the training class before returning him to work. The trial court determined that requiring the officer to complete the training class before returning him to active duty was not inconsistent with Nashville's charter or ordinances. The officer perfected this appeal. We affirm the trial court's conclusion that the Department has the authority to require the officer to complete the training before returning him to active duty.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellants, Donald Hargrove, Richard Hughey, Scott Sulfridge, Jimmie Knight, and Jerry Pinkleton.

John L. Kennedy and Rita Roberts-Turner, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

**OPINION**

**I.**

Jimmie Knight worked as a patrol officer for the Metropolitan Nashville Police Department from 1971 until he was placed on a disability pension on October 23, 1986. He apparently continued to work after leaving the Department, and in 2001 he was employed as a police officer by the City of Lavergne.

When Mr. Knight received his disability pension in 1986, it was not customary for the Metropolitan Government of Nashville and Davidson County to require persons receiving disability pensions to demonstrate periodically that they remained disabled. However, the Metropolitan Council enacted an ordinance in 1992 empowering the Employee Benefit Board to require disabled pensioners to submit proof each year that they were still disabled. In addition, the ordinance empowered the Benefit Board to discontinue a disability pension if it determined that the employee was no longer disabled and if the employee had been assigned to a position of comparable authority and responsibility to the position the employee held before he or she became disabled.

In 1999, when Mr. Knight was approximately 57 years old, the Benefit Board determined that he was no longer disabled. Thereafter, the Department offered three times to return him to active duty. Each of these offers notified him that he would be required to complete a personal history statement, to make himself available for medical, psychological, polygraph, and drug screening tests, and to enroll in and pass a 13-week lateral hire training class.[1]

The third offer, dated January 4, 2002, informed Mr. Knight that his failure to accept the offer could result in the loss of his disability pension and his ability to receive credit toward his regular retirement for the time he had been on disability. The offer directed Mr. Knight to submit the required background information and to report to the lateral training class beginning on February 19, 2002. When Mr. Knight failed to respond to this notice, the Department notified him that his refusal to provide the requested background information could be deemed to be a failure to report for work and again warned him of the consequences of failing to report.

Mr. Knight was concerned that he would lose both his disability pension and his job if he was not able to complete the lateral training class, and he believed that the Department was using the training class as a pretext to strip him of his disability pension.[2] On February 7, 2002, he joined in an already ongoing lawsuit in the Chancery Court for Davidson County challenging the Department's policy requiring former officers who had not been on active duty for more than five years to take and pass the lateral training class.[3] He also requested a temporary injunction preventing the Department from requiring him to enroll in and complete the lateral training class beginning on February 19, 2002.

---

[1] This training class consists of basic criminal law courses, physical fitness training, and training in defensive tactics and firearms. It is designed for persons who have been employed by other police departments for at least three years and is intended to acquaint them with applicable statutes, ordinances, and departmental policies and procedures. It is less extensive than the 26-week training class required for all new recruits, but it is more extensive than the annual in-service training required of all police officers on active duty.

[2] At this time, only one formerly disabled police officer had been returned to active duty. He was 52 years old when he completed the lateral training class.

[3] *Hargrove v. Metropolitan Gov't*, No. 02-215-III. This suit was originally filed by three former police officers. On February 7, 2002, they moved to amend their complaint to add Mr. Knight as a plaintiff. Later, on February 28, 2002, they moved to amend their complaint to add Jerry Pinkleton as the fifth plaintiff. The claims of the original three plaintiffs were eventually found to be moot after it was determined that they were medically unable to return to work. The lawsuit proceeded with Messrs. Knight and Pinkleton as the plaintiffs.

The trial court set a February 19, 2002 hearing on Mr. Knight's application for a temporary injunction. Prior to the hearing, the Benefit Board voted to terminate Mr. Knight's disability pension because he had failed to respond to three offers of employment. In an order entered on February 21, 2002, the trial court enjoined the Benefit Board from terminating Mr. Knight's disability pension in order to avoid irreparable harm before his claim could be adjudicated. The court also enjoined the Department from prohibiting Mr. Knight to enter the training class late and from unfairly evaluating his performance once be began the training.

The lateral training class beginning on February 19, 2002 was completed while this litigation was still pending. Accordingly, the Department made a fourth offer to Mr. Knight to attend another lateral training class any time prior to May 17, 2002. As far as this record shows, Mr. Knight did not avail himself of this opportunity.

Following a status conference on October 18, 2002, the parties agreed to submit the case to the court on briefs. On January 7, 2003, the trial court filed an order determining that Messrs. Knight and Pinkleton had not refused to accept employment by declining to enter the lateral training class that had begun on February 19, 2002. The court also determined that the Department's lateral training requirement for formerly disabled officers was not contrary to the Metropolitan Charter or Code. On April 14, 2003, the trial court entered an order deleting its conclusion with regard to the legal effect of the officers' failure to report to the lateral training class that began on February 19, 2002. Mr. Knight has appealed.[4]

## II.
### THE STANDARD OF REVIEW

This case requires the court to interpret provisions of the Metropolitan Government's Charter and ordinances. The tools for this job consist of the same rules of construction used to interpret state statutes. *City of Chattanooga v. Davis*, 54 S.W.3d 248, 265 (Tenn. 2001); *Tenn. Manufactured Hous. Ass'n v. Metropolitan Gov't*, 798 S.W.2d 254, 260 (Tenn. Ct. App. 1990). Our goal is to ascertain and to give effect to the ordinance's purpose without unduly restricting it or expanding it beyond its intended scope. *See Consumer Advocate Div. v. Greer*, 967 S.W.2d 759, 761 (Tenn. 1998); *Perry v. Sentry Ins. Co.*, 938 S.W.2d 404, 406 (Tenn. 1996).

The search for an ordinance's purpose begins with the words of the ordinance itself. *See Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986); *Winter v. Smith*, 914 S.W.2d 527, 538 (Tenn. Ct. App. 1995). If the ordinance is unambiguous, the courts need only enforce it as written. *See Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997); *Carson Creek Vacation Resorts, Inc. v. State*, 865 S.W.2d 1, 2 (Tenn.1993); *Jackson v. Jackson*, 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948). The courts must consider an ordinance as a whole, *see State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998); *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996), and in doing so, must give the words in the ordinance their natural and ordinary meaning. *See Davis v. Reagan*, 951 S.W.2d 766, 768 (Tenn. 1997); *Westland West Cmty. Ass'n v. Knox County*, 948 S.W.2d 281, 283 (Tenn. 1997).

---

[4]Mr. Pinkleton did not appeal.

Courts should also be mindful of existing law when they construe an ordinance. *See Still v. First Tenn. Bank, N.A.*, 900 S.W.2d 282, 284 (Tenn. 1995); *First Nat'l Bank of Fulton v. Howard*, 148 Tenn. 188, 194, 253 S.W. 961, 962 (1923). They should also avoid displacing existing rules and principles any further than the plain meaning of the ordinance expressly declares or necessarily implies. *See In re Deskins' Estates*, 214 Tenn. 608, 611, 381 S.W.2d 921, 922 (1964); *Harbison v. Briggs Bros. Paint Mfg. Co.*, 209 Tenn. 534, 546, 354 S.W.2d 464, 470 (1962). Likewise, they should avoid questioning the wisdom of the ordinance or substituting their own policy judgments for those of the local legislative body. *See Exxon Corp. v. Metropolitan Gov't of Nashville and Davidson County*, 72 S.W.3d 638, 641 (Tenn. 2002).

A trial court's decision regarding the interpretation of a statute or ordinance is a question of law. *State v. Walls*, 62 S.W.3d 119, 121 (Tenn. 2001). Accordingly, it will be reviewed on appeal without the presumption of correctness that customarily accompanies findings of fact. The appellate courts will review the issue de novo and reach their own independent conclusion regarding the proper interpretation of the ordinance at issue.

## III.
### THE DEPARTMENT'S PREROGATIVE TO REQUIRE RETURNING, FORMERLY DISABLED OFFICERS TO COMPLETE A LATERAL TRAINING CLASS

Mr. Knight's case rests on his belief that the Benefit Board has the authority not only to determine whether a pensioner remains disabled but also to require city departments to put the pensioner back to work without conditions once it determines that a pensioner is no longer disabled. While the Benefit Board is clearly empowered to determine whether pensioners continue to be disabled, it does not have the power to return them to work. Likewise, it does not have the power to override reasonable conditions on a pensioner's return to work established by the Civil Service Commission or a city department.

The responsibility for managing the Metropolitan Government's human resources is not vested in one department or agency. It is shared by several departments, including the Civil Service Commission, the Department of Personnel, the Employee Benefit Board, the Employees Relations Board, and the employing departments and agencies. This shared arrangement works best when the various commissions and departments operate within the limits of their legal authority.

The Civil Service Commission is chiefly responsible for developing and fostering the effectiveness of the Metropolitan Government's personnel policies with regard to employees in the classified service. Charter of the Metropolitan Government of Nashville and Davidson County, Tennessee § 12.01 (2003) ("Metro Charter"). Its authority extends to the selection and hiring of city employees, the maintenance of a classification and pay plan, and the administration of disciplinary policies and procedures. Metro Charter §§ 12.05, 12.07, and 12.10. The Commission has authority to promulgate rules, Metro Charter § 12.06, and these rules have the force and effect of law. Metro Charter § 12.07.

Acting under its rule-making power, the Commission has promulgated rules specifically regarding the re-employment of former employees of the Metropolitan Police Department. Rule 7.7 provides that

[a] member of the Police Department (Civilian or Sworn) who is on leave for six months or longer or has terminated from employment for any period will be required to successfully complete a polygraph exam and physical exam before returning to work. Upon return to work such employee may be required to successfully complete refresher training.

In addition, Rule 7.8 provides that

[a]ny officer who leaves the Metropolitan Police Department must meet the requirements of state law (T.C.A. 38-8-106 or as amended), before he [or she] can be considered for reemployment. Such officers may be required to successfully complete additional training upon reemployment or rehire.

A. Section 3.13, Reemployment provides that employees who have at least two years of service may be re-employed within one year of separation, subject to all requirements and restrictions of that section.

B. A former officer who does not meet the time requirements established in Section 3.13 may be hired under the provisions of a policy approved by the Civil Service Commission. A former officer hired under this policy will not be granted credit for prior service time.

The Metropolitan Employee Benefit Board is responsible for "administering, managing, and coordinating" the Metropolitan Government's employee benefit plans. Metro Charter § 13.02, Metropolitan Government of Nashville and Davidson County, Tennessee Code § 3.08.040(A) (2003) ("Metro Code"). It has the exclusive authority to determine the disability[5] and continuation of disability of disabled city employees, Metro Code § 3.28.060(C)(1) (1998). With regard to the continuation of disability, the Benefit Board has the authority to require disabled pensioners under 65 years of age to verify their disability on an annual basis and to conduct investigations to determine whether a disabled pensioner continues to be disabled. Metro Code § 3.28.060(B), (C)(1).

If the Benefit Board determines that a pensioner is no longer disabled, the Benefit Board has the authority to terminate the disability pension of a former police officer or fireman when two conditions are met. First, the pensioner must be "assigned to work . . . at the same, or substantially the same, rate of pay being paid at the time such pensioner was disabled." Second, the duties of the position to which the pensioner is assigned must not be "substantially less in authority or responsibility and shall be such that the pensioner can perform based on his [or her] training, education and experience." Metro Code § 3.28.060(C)(1).

---

[5]The term "disability," when applied to police officers, means "the inability and/or the incapacity to perform the duties of a . . . policeman." Metro Code § 3.28.060(G).

On at least two prior occasions, the courts have decided jurisdictional disputes between the Civil Service Commission and the Benefit Board in favor of the Civil Service Commission. When the Benefit Board attempted to force the retirement of a city employee, the Tennessee Supreme Court held that it had exceeded its legal authority and that the Civil Service Commission had the sole authority to review and approve the dismissal of a city employee. *Culbertson v. Metropolitan Gov't*, 483 S.W.2d 716, 717 (Tenn. 1971). More recently, this court held that the Benefit Board did not have authority to consider a request for payment of accrued sick leave because this matter was within the exclusive authority of the Civil Service Commission. *Bush v. Employee Benefit Bd.*, 792 S.W.2d 932, 933 (Tenn. Ct. App. 1990).

When called upon to construe the legal authority of two city agencies, we should endeavor to construe the applicable ordinances in a way that avoids conflicting or overlapping authority. The plain language of the ordinances dealing with the City's disability pensions makes clear that the Benefit Board's responsibility includes (1) determining whether a disabled pensioner continues to be disabled and (2) terminating the pensioner's disability pension once it determines (a) that the pensioner has been rehired at a rate of compensation that is the same or substantially the same as the rate of compensation being paid when the pensioner became disabled, (b) that the position to which the pensioner has been assigned is not "substantially less in authority or responsibility" than the position the pensioner was in when he or she became disabled, and (c) that the pensioner is able to perform the work based on his or her training, education, and experience.

The Civil Service Commission has clear legal authority to promulgate rules establishing reasonable requirements and conditions for returning formerly disabled employees to work. It has exercised this authority by authorizing the Metropolitan Police Department to require employees returning to work following an absence of six months or more to successfully complete additional "refresher training." Nothing in the Charter or ordinances of the Metropolitan Government empowers the Benefit Board to circumvent or overrule this retraining requirement.

Mr. Knight has not explicitly asserted that the 13-week lateral training class required by the Department is unreasonable or that it exceeds the refresher training permitted by Civil Service Commission Rules 7.7 and 7.8. However, he claims that requiring him to enroll in the lateral training class was simply a pretext to enable the City to strip him of his disability pension and his job. Requiring retraining before placing police officers who have been away from the job for almost 15 years back on the street is reasonable. In fact, the City would open itself to justifiable criticism if it did not require retraining. As far as this record shows, the only other formerly disabled police officer who returned to active duty was able to complete the lateral training class when he was 52 years old. This record contains no evidence warranting the conclusion that the City's retraining requirement is simply a veiled attempt to deprive Mr. Knight of his disability pension and his job.

## IV.
### APPLICATION OF METRO CODE § 3.28.060(C)(1)

Mr. Knight has not yet enrolled in the Department's lateral training course. Therefore, addressing the legal consequences of his failure to pass the course after making a good faith effort would be premature. However, based on our understanding of Metro Code § 3.28.060(C)(1), we have substantial doubt regarding whether assigning Mr. Knight to the lateral training course triggers

the cessation of his disability pension. Before the Benefit Board may terminate a disability pension, Metro Code § 3.28.060(C)(1) requires not only that the pensioner receive the same or substantially the same rate of pay being paid at the time the pensioner became disabled, but also that the position to which the pensioner is assigned has substantially the same authority or responsibility as the position the pensioner formerly held and that work to be performed is the sort of work that the pensioner is able to perform based on his or her training, education, and experience.

The record contains no evidence regarding the authority or responsibility of persons enrolled in the Department's lateral training class. Accordingly, we are unable to determine whether the authority of enrollees in the lateral training class is substantially the same as that of patrol officers on active duty. If the authority and responsibility is substantially the same, then the Benefit Board may terminate Mr. Knight's disability pension as soon as he enrolls in the lateral training class and begins receiving a salary that is substantially the same as the salary he was receiving when he became disabled. If, however, the authority and responsibility of trainees is less than that of regular patrol officers, then the Benefit Board may not be able to terminate Mr. Knight's disability pension until he completes the lateral training and is assigned to regular active duty.[6]

## V.

We affirm the judgment dismissing Mr. Knight's complaint seeking declaratory and injunctive relief and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Jimmie Knight and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

---

[6]In this situation, should Mr. Knight be unable to complete the lateral training successfully notwithstanding his best efforts, the Benefit Board has no basis to terminate his disability pension. If, however, Mr. Knight purposely fails the lateral training course in order to keep his disability pension, the Board and the Department will have grounds not only to terminate his employment but also to terminate his disability pension.