IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2008 Session

## METROPOLITAN ELECTRIC POWER BOARD A/K/A NASHVILLE ELECTRIC SERVICE (NES) v. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

Appeal from the Chancery Court for Davidson County
No. 07-1135-IV (III)     Ellen Hobbs Lyle, Chancellor

No. M2007-02775-COA-R3-CV - Filed December 10, 2008

A terminated Nashville Electric Service employee filed a complaint with the Human Rights Commission of the Metropolitan Government of Nashville and Davidson County. NES filed a declaratory judgment action claiming the Metropolitan Charter prevented the Human Rights Commission from investigating the complaint. The chancery court agreed with NES. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. PATRICIA J. COTTRELL, P.J., M.S., not participating.

J. Brooks Fox and Elizabeth A. Sanders, Nashville, Tennessee, for the appellant, The Metropolitan Government of Nashville and Davidson County, Tennessee.

Parks T. Chastain, T. Tamara Gauldin, Eugene W. Ward, and Kent W. Cochran, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County, Tennessee, acting by and through the Electric Power Board.

### OPINION

This case arises due to a complaint filed by Nathaniel Claybrooks with the Human Rights Commission of the Metropolitan Government of Nashville and Davidson County ("the Commission"). In his complaint, Mr. Claybrooks alleged that he was terminated from his job with the Electric Power Board of the Metropolitan Government of Nashville and Davidson County ("NES") due to racial discrimination. NES filed a motion for an administrative dismissal of the complaint because the Commission had no authority over NES or jurisdiction over this matter. The Commission denied NES's motion.

On May 18, 2007, NES, as a result of the Commission's ruling, filed a complaint for a declaratory judgment in Davidson County Chancery Court against the Metropolitan Government of Nashville and Davidson County ("Metro"), which created the Commission, and Nathaniel Claybrooks. Metro filed a motion to dismiss. The chancellor stayed the Commission's investigation until the motion to dismiss could be ruled upon. On September 4, 2007, the motion to dismiss was denied. In the same order, the chancellor also ruled that NES was not subject to the jurisdiction or authority of the Commission. On November 5, 2007, the chancellor converted the September 4, 2007 order into a final order.[1] Metro appealed.

Standard of Review

The issue presented in this case is whether NES is subject to the jurisdiction of the Commission. This is a question of law. Questions of law are reviewed de novo by the appellate court with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

Analysis

The Tennessee Constitution[2] and Tennessee law[3] permit the consolidation of city and county governments. Nashville and Davidson County combined to form the Metropolitan Government of Nashville and Davidson County in 1963. The Metropolitan Charter ("Metro Charter") is the document that governs the combined government.[4] Both parties to this action point to provisions of the Metro Charter or ordinances to support their positions.

Metro first cites the Metro Charter, Article 2, Section. 2.01.40, which says that Metro has the power "[t]o pass all ordinances necessary for the health, convenience, safety and general welfare of the inhabitants, and to carry out the full intent and meaning of this Charter, as fully as if specifically authorized." Pursuant to this authority, Metro created the Commission. M.C.L. § 2.132.020. The Commission is to resolve complaints related to discrimination regarding employment, including firing. M.C.L. § 2.132.060A.

NES seeks to use the Metro Charter as a protective shield against the Commission's investigation. NES was created by 1947 Priv. Acts, Ch. 246, which was later incorporated into

---

[1]Mr. Claybrooks never answered the complaint. On October 12, 2007, an order of default judgment was entered against him.

[2]Tenn. Const., Art. XI, § 9.

[3]Tenn. Code Ann. § 7-1-101 *et seq*.

[4]Of course, Metro is bound by state and federal law, too.

Appendix III, Article 42 of the Metro Charter at its creation. Section 24 of Article 42 states, in pertinent part:

> That neither the mayor, the metropolitan council, nor any other officer, department, board or commission of the metropolitan government, shall have or exercise any authority whatsoever over the electric power board created under the terms and provisions of this Charter, other and except to the extent herein expressly provided, and the provisions of this article shall prevail over any conflicting provisions appearing in any other article in this Charter.

Metro Charter, Appendix III, Art. 42, § 24. Furthermore, NES points out that the Metro Charter says that "when any power is vested by this Charter in a specific officer, board, commission or other agency, the same shall be deemed to have exclusive jurisdiction within the particular field." Metro Charter, Art. 2, § 2.01, ¶ 36.

The same rules of construction used to interpret statutes apply to the interpretation of the Metro Charter and ordinances. *Hargrove v. Metro. Gov't of Nashville and Davidson County*, 154 S.W.3d 565, 567-68 (Tenn. Ct. App. 2004). Thus, the charter should be construed as a whole and its words given their natural and ordinary meaning. *Id*. at 568. If the words are unambiguous, they should be enforced as written. *Id*.

The language of Article 42, Section 24 is quite clear: no "officer, department, board or commission of the metropolitan government, shall have or exercise any authority whatsoever over the electric power board created under the terms and provisions of this Charter, other and except to the extent herein expressly provided . . . ." Therefore, we must examine what powers are granted elsewhere in the Metro Charter that expressly give Metro some authority that could affect NES.

As previously noted, Metro relies on Article 2, Section 2.01.40 of the Metro Charter, which gives Metro the authority to enact "all ordinances necessary for the health, convenience, safety and general welfare of the inhabitants . . . ." This authority could be exercised in ways that could affect NES, such as building codes and traffic ordinances. Metro maintains that the ordinances creating the Commission are also such ordinances that may apply to NES. It must be remembered, however, that Article 2, Section 2.01.40 of the Metro Charter must be read in light of the language of Article 42, Section 24 stating that "the provisions of this article shall prevail over any conflicting provision appearing in any other article in this Charter." The question thus becomes whether the authority exercised pursuant to Article 2, Section 2.01.40 to create a commission with authority to investigate discrimination complaints conflicts with any provisions of Article 42 of the Metro Charter governing NES. We are persuaded that the answer is yes.

Article 42 gives the Electric Power Board "exclusive management and control of the operation of said electric power plant and/or distribution system. Except as otherwise provided in this article, said board shall have the authority, subject to the applicable civil service provisions, to determine the number of positions and employ persons to fill vacancies in said positions . . . ."

Metro Charter, Art. 42, § 18. The applicable civil service provisions are found in Article 43 of the Metro Charter, which creates a civil service system exclusively for NES employees. In our opinion, the investigatory authority of the Commission conflicts with NES's explicit and exclusive authority regarding employment. NES's explicit and exclusive authority regarding employment found in Metro Charter Articles 42 and 43, therefore, must prevail over any conflicting authority of another Metro agency created by ordinance.

Next, Metro argues that the shield of Metro Charter Art. 42, § 24 cannot be used in this conflict because the Commission's ability to investigate and make non-binding recommendations does not constitute "exercising authority" over NES as contemplated by § 24. Under M.C.L. § 11.20.100C, after a complaint is filed, the Commission gives "written notice to the employer and other persons to appear as witnesses with pertinent records." If the employer fails to comply, "the commission shall cause to be issued a citation requiring the defendant to appear in the metropolitan court on a date set for a hearing." M.C.L. § 11.20.120A. It is clear from the record that the Commission was proceeding with its investigation – NES was required to respond to the complaint and otherwise cooperate with the investigation. There can be no realistic doubt that the exercise of the Commission's investigative authority is "exercising authority" over NES within the meaning and intent of Metro Charter Art. 42, § 24 .

With its final argument, Metro seeks to retreat to fight another day. Metro claims that NES's complaint is not ripe because the Commission has not yet completed its investigation or issued a recommendation. Metro claims that NES is not attacking the validity of any particular ordinance, but is only complaining about the Commission's jurisdiction over NES, which is an issue that may only be addressed by means of a writ of certiorari. We respectfully disagree. It is true that "[w]hen a statute mandates an administrative remedy, one must exhaust this administrative remedy before seeking judicial relief." *Pendleton v. Mills*, 73 S.W.3d 115, 130 (Tenn. Ct. App. 2001). Metro, however, points to no such mandate in any relevant statute or ordinance. Furthermore, NES attacks the authority of the Commission over NES. Its attack, though unartfully worded, essentially claims that the ordinances empowering the Commission to act are invalid as applied to NES due to their conflict with the Metro Charter. This is a proper and justiciable subject for declaratory judgment. *See State of Tenn. v. Brown & Williamson*, 18 S.W.3d 186, 193 (Tenn. 2000). (A justiciable controversy must exist to maintain a declaratory judgment action.)

The judgment of the chancery court is affirmed. Costs of appeal are assessed against the Metropolitan Government of Nashville and Davidson County.

_____
ANDY D. BENNETT, JUDGE