IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2009 Session

ENTERTAINER 118 AND MERONEY ENTERTAINMENT, INC. D/B/A
KEN'S GOLD CLUB v. METROPOLITAN SEXUALLY ORIENTED
BUSINESS LICENSING BOARD

Appeal from the Chancery Court for Davidson County
No. 07-41-II    Carol L. McCoy, Chancellor

No. M2008-01994-COA-R3-CV - Filed August 14, 2009

An inspector cited an entertainer and the sexually oriented business in which she worked for violating an ordinance governing certain requirements for entertainers and businesses engaging in sexually oriented entertainment.  The  Metropolitan Sexually Oriented Business Licensing Board upheld the citations and fined the entertainer and the business $500 each.  They appealed and the chancery court affirmed.  They now appeal to the Court of Appeals.  We find that the board did not have authority to assess the fine.  We affirm the board and the chancery court's finding that the ordinance was violated, and since the board has authority to impose other sanctions, we remand the matter to the chancery court with instructions to return the matter to the board.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

John Edward Herbison, Nashville, Tennessee, for the appellants, Entertainer 118 and Meroney Entertainment, Inc. d/b/a Ken's Gold Club.

Lora Barkenbus Fox and Paul Jefferson Campbell, II, Nashville, Tennessee, for the appellee, Metropolitan Sexually Oriented Business Licensing Board.

**OPINION**

Background

According to testimony at the November 8, 2006 meeting of the Metropolitan Sexually Oriented Business Licensing Board ("the Board"), an inspector for the Board visited Ken's Gold Club for an inspection on October 1, 2006.  As he was introducing himself and informing the

manager of his purpose, the inspector noticed a waitress run up some stairs. The inspector followed her and heard her warning people that he was present. In one of the upstairs rooms, the inspector found Entertainer 118,[1] a female, with a male customer. He observed the entertainer straddling the customer's legs, "grinding the pubic region and her buttocks against the customer's pubic region."[2] She was wearing what both legal counsel called an opaque bikini and what the inspector called "a bra and underwear." The customer was wearing long pants. There was no skin-to-skin contact, but the inspector noted that the customer touched Entertainer 118's bikini-bottom-clad buttocks.

The inspector considered Entertainer 118's actions to constitute sexually oriented entertainment. In his opinion, her actions depicted sexual intercourse. He testified that her actions did not occur on a stage,[3] as required by M.C.L. § 6.54.140(C),[4] and that she was less than three feet away from the customer. The inspector brought the manager into the room and filled out an inspection form stating that Entertainer 118 violated M.C.L. § 6.54.140(B)[5] & (C). Another inspection form stated Ken's Gold Club violated M.C.L. § 6.54.130(A),[6] as well as M.C.L. § 6.54.140(B) & (C). Citations were subsequently issued.

---

[1] The names and addresses of sexually oriented business license and permit applicants are confidential. *Deja Vu of Nashville v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 395 (6th Cir. 2001). Thus, "Entertainer 118" is a pseudonym.

[2] In this context, "grinding" means "an action of rotating the hips with a suggestive motion [or erotic manner](as in a dance or in a burlesque striptease)." Webster's New International Dictionary 1000 (3d ed. 1971) (also available at http://www.merriam-webster.com/dictionary/grinding).

[3] Entertainer 118 testified she and the customer were on a couch.

[4] M.C.L. § 6.54.140(C) provides:

No customer shall be permitted to have any physical contact with any entertainer on the licensed premises while the entertainer is engaged in a performance of live sexually oriented entertainment. All performances of live sexually oriented entertainment shall only occur upon a stage at least eighteen inches above the immediate floor level and removed at least three feet from the nearest customer.

[5] M.C.L. § 6.54.140(B) provides:

No operator, entertainer or employee on the premises for furthering the business, not including independent contractors on the premises for repairs or construction, shall encourage or permit any person upon the premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any entertainer, operator or employee.

[6] M.C.L. § 6.54.130(A) provides:

An operator is responsible for the conduct of all entertainers while on the licensed premises and any act or omission of any entertainer constituting a violation of the provisions of this chapter shall be deemed the act or omission of the operator for purposes of determining whether the operator's license shall be revoked, suspended, renewed or a penalty assessed subject to the limits described in Section 6.54.150(E).

Entertainer 118 provided a somewhat different version of her activity. She testified that her customer was wearing a sweater, long pants and perhaps a hat. She said she was dancing to music, and her whole body was moving side to side and back and forth. She denied grinding her customer's pubic region with her pubic region. She denied having sexual intercourse with her customer or simulating sexual intercourse. She testified that she sat on her customer's lap nearer to his knees than to his crotch.[7] From her perspective as a performer, she said that her dance was neither erotic nor arousing: she just considered it "[a] job."

The Board voted to sustain the citations and assessed Entertainer 118 and Ken's Gold Club with a fine of $500 each.[8] Both appealed to the chancery court pursuant to the common law writ of certiorari. The chancellor upheld the citations and the fines. Entertainer 118 and Ken's Gold Club appeal to this court, raising three issues: whether state law authorizes the Board to impose fines, whether the fine contravenes Article VI, Section 14 of the Tennessee Constitution,[9] and whether the record supports a finding that the entertainer's conduct constitutes sexually oriented entertainment within the meaning of the ordinance.

Analysis

Review under a common law writ of certiorari is limited to "whether the inferior board or tribunal has exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision." *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson County*, 222 S.W.3d 359, 363 (Tenn. 2007). The reviewing court cannot (1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute its judgment for that of the lower tribunal. *Id*.

Both appellants challenge the Board's authority to assess fines. They accurately frame the issue in their brief as "whether any state statute or Metropolitan Charter provisions authorizes [sic] the levying of a fine by an administrative tribunal, as distinct from . . . a court." This issue is a question of law, which we review de novo without a presumption of correctness. *Wilson County Youth Emergency Shelter, Inc., v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999).

---

[7]She demonstrated her positioning with the assistance of her legal counsel.

[8]Entertainer 118, through her legal counsel, took the position that a fine was preferable to any period of suspension.

[9]During the pendency of this appeal, the Tennessee Supreme Court decided *Barrett v. Tennessee Occupational Safety and Health Review Commission*, No. M2006-2338-SC-R11-CV, 2009 WL 1211327 (Tenn. May 5, 2009), which determined the constitutional issue against the appellant. Appellant's counsel conceded at oral argument that the issue had been decided against him and abandoned his arguments on this issue.

Initially, we must examine Metro's authority to call for a fine for the violation of its Sexually Oriented Business Licensing Ordinance. The police power belongs exclusively to the state and passes to local governments only by legislative enactment. *State ex rel. Lightman v. City of Nashville*, 60 S.W.2d 161, 162 (Tenn. 1933). It has long been the law in Tennessee that cities and counties have only those powers expressly granted by or necessarily implied from state statutes.[10] *City of Lebanon v. Baird,* 756 S.W.2d 236, 241 (Tenn. 1988); *Bayless v. Knox County*, 286 S.W.2d 579, 585 (Tenn. 1956). A metropolitan government is no different in this regard. *See Haines v. Metro. Gov't of Davidson County*, 32 F. Supp.2d 991, 994 (M. D. Tenn. 1998). The Metropolitan Charter of Nashville and Davidson County ("Metro Charter") cannot provide for powers not authorized by its enabling legislation. *Hill v. State ex rel. Phillips*, 392 S.W.2d 950, 953 (Tenn. 1965). Therefore, we must search state legislative enactments for the Board's authority to assess the $500 fines.

Consolidation of city and county governments is authorized by a 1953 amendment to Article XI, Section 9 of the Tennessee Constitution, which states in pertinent part: "The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located . . . ." Pursuant to the authority granted by this provision, in 1957, the legislature enacted the statutes governing the consolidation of county and city governments, now codified as Tenn. Code Ann. §§ 7-1-101 *et seq*. Tenn. Code Ann. § 7-1-102(c) explains the sources of authority for the newly consolidated government:

> After consolidation of a county and a municipal corporation or corporations under § 7-1-103, no functions of the governing bodies of the county and the municipal corporation, or of the officers thereof, shall be retained and continued, unless chapters 1-3 of this title or the charter of the metropolitan government expressly so provide, or unless such retention and continuation are required by the Constitution of Tennessee. After the consolidation, no officer or agency of the county or of the municipal corporation shall retain any right, power, duty or obligation, unless chapters 1-3 of this title or the charter of the metropolitan government expressly so provide, or unless such retention and continuation are required by the Constitution of Tennessee.

Thus, the sources of authority for the consolidated government are the Tennessee Constitution, chapters 1-3 of Title 7 in the Tennessee Code Annotated (and any subsequent legislative acts applying to Metro), and prior functions of the city or county retained by the Metro Charter.[11] No one

---

[10] This principle is sometimes called "Dillon's Rule." *Southern Constructors v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

[11] Tenn. Code Ann. § 7-1-102(c) is consistent with Dillon's Rule and much more persuasive. Whereas Dillon's Rule is merely a canon of statutory construction, *Southern Constructors*, 58 S.W.3d at 710, Tenn. Code Ann. § 7-1-

(continued...)

argues that the Tennessee Constitution is a source of authority in this case, so the other possibilities will be the focus of our inquiry.

The Board points to two state statutes as authority for the Board to assess fines. First, the Board relies on Tenn. Code Ann. § 7-3-507, the pertinent part of which states: "All metropolitan governments are empowered to set a penalty of up to five hundred dollars ($500) per day for each day during which the violation of ordinances, laws and regulations of such metropolitan government continues or occurs." The chancellor concluded that, "Under the plain language of the statute, the Board had authority to levy a $500 fine against each of the Petitioners." We must respectfully disagree with the chancellor.

Statutes on the same subject matter should be construed together. *Westinghouse Elec. Corp. v. King*, 678 S.W.2d 19, 23 (Tenn. 1984). Tenn. Code Ann. § 7-3-507 is part of a statutory scheme enacted in 1993 Tenn. Pub. Acts, ch. 335, codified as Tenn. Code Ann. § 7-3-501 through 508, regarding the violation of metropolitan government ordinances, laws and regulations. These statutes, however, clearly envision a court appearance after the issuance of a citation. *See* Tenn. Code Ann. §§ 7-3-501 (violator to be given a citation "showing the ordinance, law or regulation violated and the date, time and place when the violator is to appear in court.") & -502 (requiring citations to include consequences of a failure to appear in court).[12] Given that this is not the system that was used,[13] we cannot find that Tenn. Code Ann. § 7-3-507 applies in this case.

The Board also relies on Tenn. Code Ann. § 7-51-1121, which is a part of the Adult-Oriented Establishment Registration Act of 1998, Tenn. Code Ann. §§ 7-51-1101 *et seq*. Tenn. Code Ann. § 7-51-1121(b) states:

---

[11](...continued)

102(c) is a rule of law concerning the sources of a metropolitan government's authority. While Metro correctly argues that Tenn. Code Ann. § 7-1-102(b) requires a liberal interpretation of the statutes governing Metro's authority, Metro does not and cannot explain away the clear language of Tenn. Code Ann. § 7-1-102(c) limiting the sources of that authority. Whatever powers Metro is given must be interpreted liberally, but those powers still must be traceable to the Tennessee Constitution, Tennessee legislative enactments or the prior Nashville Charter.

[12]Tenn. Code. Ann. § 7-3-502 states that "[e]ach citation or civil warrant issued pursuant to this part [Tenn. Code Ann. §§ 7-3-501 *et seq*.] shall have printed on it, in large, conspicuous block letters, the following:

NOTICE: FAILURE TO APPEAR IN COURT ON THE DATE ASSIGNED BY THIS CITATION/WARRANT CAN RESULT IN: THE COURT ORDERING YOU TO PAY A CIVIL FINE/PENALTY, COURT COSTS AND LITIGATION TAXES TO THE METROPOLITAN GOVERNMENT; THE ISSUANCE OF AN EXECUTION AND GARNISHMENT TO COLLECT THE FINE/PENALTY, COSTS AND TAXES; AND THE ISSUANCE OF A BENCH WARRANT FOR YOUR ARREST FOR CONTEMPT OF COURT, WITH A PENALTY OF UP TO FIVE (5) DAYS IN JAIL AND/OR A FINE OF UP TO TEN DOLLARS ($10.00).

[13]The citations did not contain the language required by Tenn. Code Ann. § 7-3-502.

Notwithstanding any provision of subsection (a) or any other law to the contrary, if a city or other political subdivision in this state chooses to enact and enforce its own regulatory scheme for adult-oriented establishments and sexually-oriented businesses, then the provisions of this part shall not apply within the jurisdiction of such city or other political subdivision.

The Board views this provision as implicit authorization for a political subdivision to enact regulations, which include fines, for adult-oriented establishments and sexually-oriented businesses. We do not read Tenn. Code Ann. § 7-51-1121(b) so broadly. Tenn. Code Ann. § 7-51-1121(b) merely recognizes that some local governments may have independent authority to enact such regulations and expressly provides for that contingency. It does not grant such authority to local governments.

The Board also relies on three provisions of the Metro Charter, § 2.01(36), (39) and (40), which state:

The metropolitan government of Nashville and Davidson County shall have power:
. . .
36.    To create, alter or abolish departments, boards, commissions, offices and agencies other than those specifically established by this Charter, and to confer upon the same necessary and appropriate authority for carrying out of all powers, including the promulgation of building, plumbing, zoning, planning and other codes; but when any power is vested by this Charter in a specific officer, board, commission or other agency, the same shall be deemed to have exclusive jurisdiction within the particular field.
. . .
39.    To provide penalties for violations of any ordinance adopted pursuant to the authority of this Charter or of general law.

40.    To pass all ordinances necessary for the health, convenience, safety and general welfare of the inhabitants, and to carry out the full intent and meaning of this Charter, as fully as if specifically authorized.

It is important to note that these charter provisions are traceable to state legislative enactments. Subsection 36 is authorized by Tenn. Code Ann. § 7-2-108(a)(16) (charters of consolidated governments shall provide for departments, agencies, boards and commissions). Subsections 39 and 40 are derived from the 1947 Private Act Charter for the City of Nashville, 1947 Tenn. Priv. Acts, ch. 246, Art. 13(14) and (34) and are, therefore, permitted by Tenn. Code Ann. § 7-1-102(c).

Metro Charter § 2.01(36) & (40) support the creation of a board to regulate adult businesses. Ordinance 097-796, the original ordinance passed on August 19, 1997, and codified as M.C.L. 6.54.010 *et seq.*, created the Adult Entertainment Licensing Board and a regulatory system for adult

businesses.[14]  The preamble of the ordinance indicates that it was intended "to regulate adult entertainment establishments in order to promote and secure the general welfare, health and safety of the citizens of Metropolitan Nashville and Davidson County."  Section 1 of the ordinance elaborates upon its purpose and contains many findings supporting that purpose.  M.C.L. 6.54.150 creates a $500 fine for a violation of the metro ordinances governing sexually oriented businesses. The fine is authorized by Metro Charter § 2.01(39) and Tenn. Code Ann. § 6-54-308, which authorizes a $500 fine for violations of municipal ordinances.[15]

Now that we have established that Metro's regulation of sexually oriented businesses and imposition of fines upon such businesses and entertainers are permissible,[16] we must examine whether the Board itself has authority to impose the fine or whether the fine must be assessed by a court.

The general law on enforcement of metropolitan ordinances is found in Tenn. Code Ann. §§ 7-3-501 *et seq*.  Tenn. Code Ann. § 7-3-501 states:

> When any person violates an ordinance, law or regulation of a metropolitan government, any police or peace officer of such metropolitan government or any employee of the metropolitan government authorized to enforce such ordinance, law or regulation, in whose presence the violation is committed or who determines after investigation that there is probable cause such a violation has been committed, may issue a citation or civil warrant, giving a copy to the violator, showing the ordinance, law or regulation violated and the date, time and place when the violator is to appear in court.

As we have already noted, Tenn. Code Ann. §§ 7-3-501 *et seq*. envisions a court appearance after the issuance of a citation. It appears all violations of Title 6 of the Metropolitan Code of Laws, Business Licenses and Regulations, that concern penalties are dealt with in court. *See* M.C.L. Title 6.  The only exceptions are fines assessed by the Metropolitan Sexually Oriented Business Licensing Board and the Metropolitan Beer Permit Board.  The Beer Board has express state statutory authority to assess civil penalties.  Tenn. Code Ann. § 57-5-108(a)(1)(A) & (B).  Even then, the penalty is reviewed by statutory writ of certiorari, with a trial de novo as a substitute for an appeal.  Tenn. Code

---

[14] A subsequent ordinance, not in the record, is presumed to change the name of the board to the Metropolitan Sexually Oriented Business Licensing Board.

[15] Metro has all the powers that cities have under the general laws of Tennessee.  Tenn. Code Ann. § 7-2-108(a)(1)(A).  Pursuant to Tenn. Code Ann. § 6-54-308(a), "Except as provided in § 6-54-306 for home rule municipalities, the legislative body of any other municipality may establish a monetary penalty not to exceed five hundred dollars ($500) for each violation of an ordinance of such municipality."  Tenn. Code Ann. § 6-54-308(b) exempts moving traffic violations from the authority granted in Tenn. Code Ann. § 6-54-308(a).

[16] In *Deja Vu of Nashville v. Metro Gov't of Nashville and Davidson County*, 274 F.3d 377, 392 (6th Cir. 2001), litigation in which Ken's Gold Club was a party, the parties agreed that Metropolitan Nashville validly enacted the ordinance.

Ann. § 57-5-108(d). We have found no similar state statutory authority for the Metropolitan Sexually Oriented Business Licensing Board to assess the fine. Absent such authority, the Board cannot assess a fine against either Entertainer 118 or Ken's Gold Club.

The lack of authority to assess a fine does not leave the Board powerless. Under M.C.L. 6.54.150(B)(2),[17] a permit can be suspended for five to thirty days for a first violation.

The appellants challenge the Board's finding that a violation occurred. Entertainer 118 was cited for violating M.C.L. § 6.54.140(B) and (C). M.C.L. § 6.54.140(B) provides:

> No operator, entertainer or employee on the premises for furthering the business, not including independent contractors on the premises for repairs or construction, shall encourage or permit any person upon the premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any entertainer, operator or employee.

M.C.L. § 6.54.140(C) provides:

> No customer shall be permitted to have any physical contact with any entertainer on the licensed premises while the entertainer is engaged in a performance of live sexually oriented entertainment. All performances of live sexually oriented entertainment shall only occur upon a stage at least eighteen inches above the immediate floor level and removed at least three feet from the nearest customer.

No party contests that Ken's Gold Club is a sexually oriented business under the ordinance. Entertainer 118 and Ken's Gold Club contest whether Entertainer 118's conduct constitutes "sexually oriented entertainment" under the ordinance. "Sexually oriented entertainment" is defined by the ordinance to mean "the regular presentation, for a fee or incidentally to another service, of material or exhibitions distinguished or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas' as defined in this section for observation by patrons therein." M.C.L. § 6.54.010(AA). The ordinance then defines "Specified sexual activities" as:

1. Human genitals in a state of sexual stimulation or arousal;

2. Acts of human masturbation, sexual intercourse or sodomy;

---

[17] M.C.L. 6.54.150(B)(2) states:

Upon the first violation of Chapter 6.54, Tennessee Code Annotated Section 57-4-204 or Metropolitan Code Section 7.24.030 within a twenty-four-month period, not including periods of suspensions, the licensee shall either be fined five hundred dollars or his/her license shall be suspended for a period no less than five days and no longer than thirty days or the licensee shall be both fined five hundred dollars and his or her license suspended for a period of not less than five days and no longer than thirty days.

3.  Fondling or erotic touching of human genitals, pubic region, buttock or female breasts.

M.C.L. § 6.54.010(DD).

Entertainer 118 and Ken's Gold Club maintain that the ordinance was not violated.  In their view, there was no actual "touching of human genitals, pubic region, buttock or female breasts," or depiction of sexual intercourse because Entertainer 118 and her customer were clothed.  Consequently, she was not engaged in "sexually oriented entertainment," and the "no touch" and "three foot distance" requirements of M.C.L. § 6.54.140(B) and (C) were not violated because they do not apply.

The words of ordinances, like statutes, must be given their natural and ordinary meaning.  *Hargrove v. Metro. Gov't of Nashville & Davidson County*, 154 S.W.3d 565, 568 (Tenn. Ct. App. 2004).  Requiring a depiction of sexual intercourse or the touching of an entertainer's buttocks to involve skin-to-skin contact goes far beyond the natural and ordinary meaning of the words of the ordinance.  Such an interpretation also unreasonably narrows the ability to achieve at least one of the purposes of the provision: to "redress the high instances of sex crimes prevalent at sexually oriented businesses.*" Deja Vu of Nashville*, 274 F.3d at 396.  We interpret the ordinance as the Board did: a customer's touching of an entertainer's bikini-bottom-clad buttocks is a violation of the ordinance.

Entertainer 118 and Ken's Gold Club argue that M.C.L. § 6.54.140(B) and (C) are too vague to be enforced.  They point to Tenn. Code Ann. § 39-13-501(6), a criminal statute that defines "sexual contact" to include the touching of clothing over another person's "intimate parts."[18]  Due process, however, requires less precision in civil statutes than in criminal statutes.  *State ex rel. Woodall v. D & L Co., Inc.*, No. W1999-00925-COA-R3-CV, 2001 WL 524279, *8 (Tenn. Ct. App. 2001).  "A statute is not unconstitutionally vague merely because it calls upon the trier of fact to apply his or her own reasonable judgment." *Id.*  While the ordinance may require the exercise of reasonable judgment to determine what "touching" is, as a civil matter, it is not unconstitutionally vague.[19]

Without rehashing the testimony, we find that there is material evidence to justify the Board's conclusion that Entertainer 118 was touched by her customer in a manner that violated  M.C.L. §

[18]  Intimate parts are clearly defined in Tenn. Code Ann. § 39-13-501(2).

[19]  The Board has argued that res judicata bars Entertainer 118 and Ken's Gold Club from challenging the constitutionality of the definition of "sexually oriented entertainment" found in the ordinance due to the *Deja Vu* litigation. *See Deja Vu*, 274 F.3d at 277.  Res judicata bars a second law suit between the same parties or their privies on the same cause of action with respect to all issues that were or could have been litigated. *In re Estate of Boote*, 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005).  Ken's Gold Club was a party to the *Deja Vu* litigation, in which the constitutionality of the definition of "sexually oriented entertainment" was challenged.  We believe Ken's Gold Club is barred by res judicata from raising this issue.  While it is possible that Entertainer 118 is also barred as a privy of Ken's Gold Club, *see Bates v. Township of Van Buren*, 459 F.3d 731, 736 (6th Cir. 2006), the record is not fully developed on this point, so we have elected to address the vagueness issue.

6.54.140(B).  We further find that there is material evidence to support the Board's conclusion that Entertainer 118 engaged in "sexually oriented entertainment" within the meaning of M.C.L. § 6.54.010(AA) and that Entertainer 118 violated M.C.L. § 6.54.140(C).  Thus, Ken's Gold Club also violated these regulations and M.C.L. § 6.54.130(A) as well.

## Conclusion

We find that the Sexually Oriented Business Licensing Board cannot assess a fine directly against either Entertainer 118 or Ken's Gold Club.  We also affirm the decision of the Board that Entertainer 118 and Ken's Gold Club violated the Metro ordinances.  We remand the matter to the trial court with instructions to return the matter to the Board for reconsideration of the penalty to be assessed against Entertainer 118 and Ken's Gold Club consistent with this opinion.

Costs of appeal are assessed against appellants Entertainer 118 and Ken's Gold Club, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE